IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

MARGARET R. SOUERS,          *
                             *
          Plaintiff,         *
                             *
     v.                      *          CV 108-157
                             *
PETE GEREN, Secretary,       *
Department of the Army,      *
                             *
          Defendant.         *

---

O R D E R

---

Before the Court is Defendant's motion to dismiss for lack
of subject-matter jurisdiction, failure to state claims for
which relief can be granted, and judgment on the pleadings.
(Doc. no. 23.) Plaintiff has responded in opposition. (Doc. no.
24.) Defendant has, over Plaintiff's objection, replied.[1] (Docs.
no. 26 & 27.) For reasons discussed herein, Defendant's motion
to dismiss is **GRANTED**.

---

[1]      Plaintiff objects to "additional argument by the Defendant on the
Defendant's own motions." (Pl.'s Opp'n. to Def.'s Notice of Intent to File
Reply Br. at 2, Doc. no. 27.) The Court would agree with Plaintiff if
Defendant simply re-plowed arguments made in the initial motion, or raised
arguments that could have previously been made. However, Defendant's reply
merely responds to new issues raised by Plaintiff in her response to
Defendant's motion to dismiss. Therefore, Plaintiff's objection is **OVERRULED**.

## I. Background

The facts recited in this order are drawn from Plaintiff's second amended complaint and the exhibits attached by Plaintiff to her original complaint.[2] Plaintiff Margaret R. Souers (Plaintiff) was employed as a federal civil servant, specifically, a level GS-11 Clinical Social Worker for the Army Substance Abuse Program. Plaintiff was employed with the Army (the agency) for approximately seven years. Plaintiff worked at Eisenhower Army Medical Center located on Fort Gordon, a United States military installation near Augusta, Georgia.

Plaintiff had a problem of reporting to work late. Plaintiff attributes her tardiness to major depressive disorder,

---

[2]   The Court need not convert this motion to dismiss into one for summary judgment because it is considering the exhibits attached to Plaintiff's complaint.

> In determining whether to grant a Federal Rule 12(b)(6) motion, district courts primarily consider the allegations in the complaint. The court is not limited to the four corners of the complaint, however. Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment.

375-76 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004). Under Eleventh Circuit law, the enclosures Plaintiff attached to her complaint are, for all purposes, part of Plaintiff's complaint. This includes purposes such as this one where a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) has been brought and the attached documents are central to Plaintiff's complaint and are undisputed. See Financial Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007); Horsley v. Feldt, 304 F.3d 1125, 1134-35 (11th Cir. 2002) (interpreting Fed. R. Civ. P. 10(c)); see also Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1205 (11th Cir. 2007); Solis-Ramirez v. U.S. Dept. of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985). Further, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." Griffin Indus., 496 F.3d at 1206 (citation omitted).

circadian rhythm sleep disorder, and a thyroid disorder, the compounded effects of which make it difficult for her to wake up and report to work on time. (Compl. at 2.) Due to her alleged medical conditions, Plaintiff requested that her employer accommodate her by granting her a flexible work schedule, designating her frequent absences from work as unpaid leave under the Family and Medical Leave Act (FMLA), 5 U.S.C. § 6381-87, rotating her to alternate duty stations within the agency's hospital, giving her permission to partially work from home, and transferring her to another position with a more flexible work schedule. (Compl. at 3.) To accommodate Plaintiff, Plaintiff's supervisor moved Plaintiff's start time from 8:00 a.m. to 8:30 a.m., and then from 8:30 a.m. to 9:00 a.m. The agency also counseled Plaintiff regarding her obligation to report to work on time, reminded her of appropriate leave procedures, and disciplined her in the form of a suspension for her tardiness. (Compl. Ex. 3 at 4.)

Dissatisfied with the adequacy of the agency's accommodations, Plaintiff filed several complaints with the Equal Employment Opportunity (EEO) Office at Fort Gordon. (Compl. Ex. 7.) Plaintiff's allegations in her EEO complaints centered on her requested accommodations for her alleged disability, and an alleged wrongful entry contained in her Provider Credentials File, a copy of which Plaintiff alleges she

was wrongfully denied. (Compl. Ex. 7.) Plaintiff further asserts that the wrongful entry in her credentials file impacted several employment decisions, specifically, decisions related to promotions and her employment opportunities within the agency. (Id.)

Plaintiff's EEO complaints were consolidated by an Administrative Law Judge (ALJ) of the Equal Employment Opportunity Commission (EEOC), and were subsequently resolved by way of a negotiated settlement agreement reached by the parties and entered on May 18, 2007. (Compl. Ex. 6.) The settlement agreement was read into the record by the ALJ, and was transcribed by the court reporter.[3] (See Compl. Ex. 6.)

Pursuant to the terms of the settlement, Plaintiff's report time for work was moved up again, this time from 9:00 a.m. to 10:00 a.m. The altered work schedule was scheduled to run for a period of six months, after which Plaintiff's managers were to reevaluate Plaintiff's schedule. (Id. at 2.) The terms of the settlement also provided that Plaintiff could not have more than three late arrivals within any thirty day period. (Id. at 3.) The agreement did not provide for what recourse the agency had in the event of more than three late arrivals within any thirty

---

[3]     Oral settlement agreements entered into the record by an EEOC ALJ, transcribed by the ALJ's court reporter, have been routinely upheld. See Jackson v. Sec'y of the Treasury, EEOC DOC 01A54710, 2005 WL 3452087 at *2 (E.E.O.C. Nov. 29, 2005); Rouse v. Dep't of the Navy, EEOC DOC 01912573, 1991 WL 1187557 (E.E.O.C. Sept. 6, 1991); Acree v. Dep't of the Navy, EEOC DOC 05900784, 1990 WL 1112990 (E.E.O.C. Oct. 4, 1990).

4

day period, however. Plaintiff's credential files were to be reviewed and corrected within thirty days, after which Plaintiff would be afforded access to the file. (Id. at 3-4.) The agreement also reduced a fourteen day suspension of Plaintiff to a seven day suspension. (Id. at 3.) In exchange for the terms outlined above, Plaintiff agreed to release her claims before the EEOC. After the settlement was entered into the record, the ALJ, in a written order, expressly dismissed Plaintiff's case with prejudice on June 6, 2007.[4] (Compl. Ex. 5.)

Nevertheless, Plaintiff continued to appear late for work. Plaintiff admits arriving late to work thirteen times from June 4, 2007, to August 30, 2007, but argues the absences should be excused as due to her alleged disability. (Compl. Ex. 3 at 3.) On or around August 13, 2007, Plaintiff nominated herself for another GS-11 level position within the agency at Fort Gordon. Subsequently, on September 17, 2007, the agency notified Plaintiff of her proposed removal due to her excessive tardiness.[5] (Compl. at 11.) Plaintiff was ultimately terminated,

---

[4]     By letter dated October 14, 2007, Plaintiff alleged that, due to her removal from employment, discussed *infra*, the agency breached the settlement agreement. The agency determined that it did not, and the EEOC affirmed the agency's decision. Margaret R. Souers, EEOC DOC 0120080894, 2008 WL 2264399 (E.E.O.C. May 20, 2008). The EEOC reasoned that Plaintiff's removal was not recourse for being late more than three times in thirty days, but rather constituted a subsequent act of alleged discrimination. Id. at *2. The EEOC decision is not before the Court for review.

[5]     Worthy of note is that the notice of proposed removal also cited Plaintiff's failure to follow proper leave procedures and disruptive

effective October 29, 2007. (Id.) After being notified of her proposed removal from employment, but before she was actually terminated, Plaintiff applied for three other vacant social work positions with the agency. (Id.) Plaintiff claims to have never received any response to her applications regarding these positions. (Id.)

Plaintiff appealed the decision to terminate her employment to the Merit Systems Protection Board (MSPB) arguing her termination constituted disability discrimination. An ALJ for the MSPB affirmed the agency's decision to terminate Plaintiff and rejected Plaintiff's arguments that the termination was motivated by disability discrimination. (Compl. Ex. 3.) Plaintiff then petitioned the MSPB appeals board for review of the ALJ's decision, and the appeals board affirmed the initial decision. (Compl. Ex. 2.) Plaintiff then appealed that decision to the EEOC, which again, was affirmed. (Compl. Ex. 1.)

Plaintiff then, proceeding *pro se,* filed her civil action in this Court pursuant to 5 U.S.C. § 7703. Plaintiff's complaint sets forth multiple claims, the first of which are claims for disability discrimination, harassment, and retaliation, brought pursuant to Section 501 of the Rehabilitation Act of 1973 (Rehab Act), 29 U.S.C. § 791. (Compl. at 1-5.) The complaint also alleges a violation of the Privacy Act, 5 U.S.C. § 522a,

---

behavior. (Compl. Ex. 3 at 2 n.2.) The removal, however, was subsequently limited to being based upon excessive tardiness. (Id.)

regarding Plaintiff's credential file entry (compl. at 5-7), violations of the FMLA (compl. at 7-9), and that the Army engaged in retaliation and various prohibited personnel practices in violation of the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. § 2302, regarding other positions Plaintiff applied for, but never received, and Plaintiff's termination (compl. at 9-12).

In lieu of answering the complaint, Defendant moved to dismiss each of Plaintiff's causes of action under Rule 12 of the Federal Rules of Civil Procedure. Defendant first argues that Plaintiff's causes of action based upon events that were the subject of Plaintiff's EEO complaints—subsequently resolved by the settlement agreement before the EEOC ALJ on May 17, 2007—should be dismissed based on the affirmative defenses of waiver, release, and *res judicata*.[6] Defendant next moves the Court to dismiss Plaintiff's FMLA cause of action based upon a lack of subject matter jurisdiction due to an absence of a waiver of sovereign immunity. Finally, Plaintiff moves the Court to dismiss Plaintiff's prohibited personnel practices claims based on events not subsumed within the settlement agreement due to Plaintiff's failure to exhaust administrative remedies, and for judgment on the pleadings. The Court will address the relevant legal standards and then address each argument in turn.

---

[6]     See Fed.R.Civ.P. 8(c)(1).

## II. Motion to Dismiss Standard

A motion to dismiss for failure to state a claim based upon Rule 12(b)(6) does not test whether the plaintiff will ultimately prevail on the merits of the case. Rather, it tests the legal sufficiency of the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002). Therefore, the court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949-50 (2009).

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. (internal citations and punctuation omitted).

The Court further stated that while there was no "probability requirement at the pleading stage," id. at 556, "something beyond . . . mere possibility . . . must be alleged" id. at 558 (citing Durma Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)). Therefore, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," id. at 545, and sufficient "to state a claim for relief that is plausible on its face." Id. at 547. Additionally, the Court is mindful that "allegations in a pro se complaint are to be held to less stringent standards than are pleadings drafted by an attorney." Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986). The court applies the same standard to a motion for judgment on the pleadings brought under Rule 12(c) as it does to a motion to dismiss for failure to state a claim brought under Rule 12(b)(6).

A motion to dismiss based upon lack of subject matter jurisdiction under Rule 12(b)(1), on the other hand, takes on one of two forms. Facial attacks require the court merely to look and see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction in the complaint. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (1990) (citations and quotations omitted). "As it does when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court construes the complaint in the light most favorable to the plaintiff and

accepts all well-pled facts alleged in the complaint as true."
Sinaltral v. Coca-Cola, 578 F.3d 1252, 1260 (2009) (citing
McElmurray v. Consol. Gov't of Augusta-Richmond County, 501 F.3d
1244, 1251 (11th Cir. 2007)). The court also need not accept the
complaint's legal conclusions as true. Iqbal, 129 S. Ct. at
1949-50.

Factual attacks on subject matter jurisdiction, however,
challenge the existence of subject matter jurisdiction
irrespective of the pleadings, and matters outside the
pleadings, such as testimony and affidavits, are considered.
Lawrence, 919 F.2d at 1529 (citations and quotations omitted).
When the attack is factual,

> the trial court may proceed as it never could under
> 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a
> factual 12(b)(1) motion is the trial court's
> jurisdiction-its very power to hear the case-there is
> substantial authority that the trial court is free to
> weigh the evidence and satisfy itself as to the
> existence of its power to hear the case. In short, no
> presumptive truthfulness attaches to plaintiff's
> allegations, and the existence of disputed material
> facts will not preclude the trial court from
> evaluating for itself the merits of jurisdictional
> claims.

Lawrence, 919 F.2d at 1529 (quoting Mortenson v. First Fed. Sav.
& Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977)). "In the face
of a factual challenge to subject matter jurisdiction, the
burden is on the plaintiff to prove that jurisdiction exists."
OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002).

## III. Discussion

### A.  Plaintiff's Claims Arising Prior to May 11, 2007, the Date of the Settlement Agreement

Defendant seeks to dismiss Plaintiffs' claims arising prior to May 11, 2007, the date which Plaintiff entered into her settlement agreement with the Army before the EEOC ALJ. (Compl. Ex. 6.) These claims include Plaintiff's Rehab Act claims based on events prior to May 17, 2007, Plaintiff's Privacy Act claim, and Plaintiff's claims regarding prohibited personnel practices, allegedly in violation of the CSRA, based upon events occurring prior to May 11, 2007. Defendant asserts as one theory that the claims are barred by the doctrine of *res judicata*.[7] (Mot. to Dismiss at 12-13, Doc. no. 23.)

Defendant's motion to dismiss these claims is properly construed as a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. See Later & Sons v. Dinkler Hotels Co., 199 F.2d 854, 855 (5th Cir. 1952)[8]; Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001)(recognizing Later & Sons as holding that the affirmative defense of *res judicata* can be raised properly and decided in 12(b)(6) motion).

---

[7]  Plaintiff has not responded to Defendant's argument regarding *res judicata*, therefore it is deemed unopposed. See L.R. 7.5 (S.D. Ga.).

[8]  Fifth Circuit decisions handed down prior to October 1, 1981, are binding in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

In the Eleventh Circuit, claims are barred by the doctrine of *res judicata* when four elements are present: (1) a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases. Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999). An administrative decision made in a judicial capacity has *res judicata* effect. Gardner v. Nicholson, 181 Fed. Appx. 961, 964 (11th Cir. 2006) (quoting United States v. Utah Constr. & Mining. Co., 384 U.S. 394 (1966)). Here, the elements of *res judicata* are met for those causes of action encompassed in the EEOC settlement agreement.

Regarding the first element, whether the EEOC's order of dismissal was on the merits, the court recognizes that the ALJ's dismissal order did not resolve the substance of Plaintiff's complaint before the EEOC. Nevertheless, the ALJ's dismissal order expressly references the settlement agreement, which does resolve the merits of Plaintiff's EEO complaint.[9] When the

---

[9] Plaintiff purports to wage an attack on the settlement agreement's validity for the first time in her response to the instant motion to dismiss. However, the Court notes that, by Plaintiff's own admission in her response, she has failed to challenge the validity of the agreement during the administrative process. (Resp. at 10.) Moreover, Plaintiff has, before both the EEOC and the MSPB, asserted that the agency breached the terms of the settlement agreement. (Id.) By doing so, Plaintiff presupposed the agreement's validity. Thus, no administrative court has had occasion to pass on the agreement's validity.

parties consent to a final judgment of dismissal, due to an underlying settlement agreement resolving the case, the *res judicata* effect applies to the subject matter of the settlement, not the original complaint. <u>Norfolk S. Corp. v. Chevron, U.S.A., Inc.</u>, 371 F.3d 1285, 1288-89 (11th Cir. 2004). Here, the settlement agreement encompasses all the claims brought before the EEOC ALJ. The settlement leaves no portion of the claims "carved out" as eligible for future litigation.

Transcription of the settlement agreement by the ALJ's court reporter reveals that the settlement arose as follows:

> Judge Rhodes: We are back on the record in the matter of *Margaret R. Souers vs. Francis J. Harvey, Secretary of the Army*. EEOC number 410-2007--00056X, Agency number ARGORDONO5DEC12271. At the conclusion of the testimony yesterday Ms. Souers and John Belser, the attorney for the [Army], and I discussed the possibility of resolution of this matter. We continued our discussion this morning and now I believe we have

---

A federal employee must exhaust administrative remedies prior to filing a civil complaint of discrimination in the workplace. <u>Brown v. Snow</u>, 440 F.3d 1259, 1262 (11th Cir. 2006). Complainants in the Eleventh Circuit, specifically, must participate in the administrative process in good faith to satisfy the doctrine of exhaustion of administrative remedies. See <u>Brown</u>, 440 F.3d at 1263-64. Specifically, the <u>Brown</u> court stated that, "To determine whether an employee failed to exhaust h[er] administrative remedies, [courts in the Eleventh Circuit] consider whether 'the complainant made a good faith effort to comply with the regulations and, particularly, to provide all the relevant, specific information available to him or her.'" <u>Brown</u>, 440 F.3d at 1263 (quoting <u>Wade</u>, 796 F.2d at 1376).

The Court agrees with Defendant's assertion that "Challenging the validity of the agreement in the judicial arena only after having failed to prevail in the administrative arena is not indicative of good faith." (Reply at 4, Doc. no. 26.) Plaintiff has never presented a claim that the settlement agreement was invalid in the administrative courts. Indeed, Plaintiff presupposed that it was valid, and attempted to rely on it in the administrative system. Thus, an investigation on the agreement's validity was never undertaken, and no factual record was developed on the issue. Plaintiff raises no arguments here that could not have been raised in the administrative courts. Plaintiff failed to exhaust her argument that the settlement agreement is invalid, and her argument is now foreclosed.

a resolution and I'd like to go over the terms of it and then we will find out from the parties whether or not these are the terms that the parties agreed to.

(Compl. Ex. 6 at 2.) The ALJ then outlined the terms of the agreement, as set forth *supra*. (See also Id. at 2-4.) Plaintiff confirmed on the record that the ALJ's recitation correctly reflected the terms of the parties' resolution. (Id. at 4.) Before entering the dismissal order, the ALJ stated in the record: "Well, what I will be doing is issuing an order terminating this matter based on the fact that there has been a resolution of the issues." (Compl. Ex. 6.) The ALJ's dismissal order stated:

On May 18,2007, during the second day of the hearing in this matter, the parties reached a settlement of the issues. The terms of the settlement were stated on the record by the undersigned Administrative Judge, the parties discussed clarifications of the terms and agreed to the terms as stated by the Administrative Judge. (Copy of Resolution Agreement attached.) Therefore, this case is dismissed, with prejudice.

(See Compl. Ex. 5.) Plaintiff admits that in exchange for, *inter alia*, the altered start time promised to her by the agency, she "relinquished subsequent processing of her complaint." (See Pl.'s Resp. at 7.) The Court thus finds that the EEOC dismissal was on the merits. See Browder v. U.S. Postal Serv., No. 2:07cv391-ID, 2008 WL 762094, at *5-6 (M.D. Ala. March 19, 2008) (granting defendant summary judgment on former federal

employee's claims subsumed in settlement agreement entered before an ALJ based on *res judicata*).

Regarding the second and third factors in the *res judicata* analysis, the EEOC ALJ was acting in a judicial capacity when she dismissed Plaintiff's consolidated complaint, rendering the tribunal a "court of competent jurisdiction" for purposes of *res judicata*. See Utah Constr. & Mining. Co., 384 U.S. at 422 ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose."); Astoria Fed. Sav. and Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991) (upholding Utah Constr. & Mining. Co. for the cited proposition). Further, the parties now before the Court are the exact same as they were in the prior administrative proceeding.

Finally, this case involves the same causes of action that were brought forth in the prior proceeding. The allegations that formed the basis of Plaintiff's consolidated EEO complaints are outlined in various investigatory letters Plaintiff attached to her complaint. (See Ex. 7.) Plaintiff's allegations were all consolidated before the EEOC, and were all disposed of by the EEOC pursuant to the parties' settlement. The agreement left no portion of the claims "carved out" as eligible for future litigation. These same allegations form the basis of Plaintiff's

15

Rehab Act claims, her Privacy Act claim, and the portion of Plaintiff's claims regarding prohibited personnel practices based upon events occurring prior to May 11, 2007, lodged in Plaintiff's complaint before the Court.

Based on the foregoing, Plaintiff's claims for events occurring prior to May 17, 2007, resolved by the settlement agreement, are *res judicata*. Accordingly, the claims are **DISMISSED**.


**B.    Plaintiff's FMLA Retaliation Claim**

Defendant also moves the Court to dismiss Plaintiff's retaliation claim under the FMLA based upon lack of subject-matter jurisdiction.[10] Defendant's attack upon subject-matter jurisdiction here is facial. Plaintiff seeks to recover money damages as a result of the agency's alleged retaliation against her for requesting FMLA leave. (Compl. at 7-9.)

Based on the face of the complaint, Plaintiff was employed by the agency for more than twelve months. (Compl. at 2.) Plaintiff is therefore considered a Title II employee for purposes of the FMLA. See 29 U.S.C. § 2611(2)(B)(1); 5 U.S.C. § 2105(a), 6301(1)(B) (defining Title II employees under the FMLA). Congress has provided a private right of action for Title

---

[10]    Plaintiff has, again, not responded to Defendant's argument regarding her FMLA claim, therefore it is deemed unopposed. See L.R. 7.5 (S.D. Ga.).

I FMLA employees, see 29 U.S.C. § 2617(a)(2), but not for those governed by Title II.

Based on the lack of an express grant of a private cause of action for Title II employees, the Eleventh Circuit has held that Title II federal employees may not bring private suits for retaliation based on the FMLA. Cavicchi v. Sec'y of Treasury, No. 04-10451, 2004 WL 4917357, at *6 (11th Cir. Oct. 15, 2004) (reasoning that Congress has not waived sovereign immunity for this type of claim). Accordingly, Plaintiff's retaliation claim under the FMLA is **DISMISSED** for lack of subject matter jurisdiction.

## C. Plaintiff's Retaliation Claims Arising After May 11, 2007

Plaintiff states in her complaint that she was not selected for four positions within the agency to which Plaintiff applied: one newly-created GS-11 level position similar to Plaintiff's previous position, and three other vacant social worker positions, all at Fort Gordon. (See Compl. at 11.) Liberally construing Plaintiff's complaint, Plaintiff claims her non-selection was the result of retaliation by Plaintiff's supervisor. Plaintiff's complaint may also be read to allege that her termination was retaliatory. (Id. at 12.) Plaintiff cites her protected activity as her request to the Inspector

General for an internal investigation after the suicide of one of her former patients, and her filing of EEO complaints when the agency "failed to make reasonable accommodation for plaintiff's disabling condition." (Id. at. 11-12.) Plaintiff cites the CSRA's antiretaliation provisions, 5 U.S.C. § 2302(b)(4), (8)(A)(i), 8(B)(ii), (9)(A), and 9(C) as the law violated by Plaintiff's retaliatory non-selection and termination.[11]

Defendant moves to dismiss these claims based on a failure by Plaintiff to exhaust them in the administrative courts. Thus, the Court starts with the proposition that "Both federal statutes and EEOC regulations require a federal employee to exhaust an administrative process before filing a civil complaint of discrimination in the workplace." Brown, 440 F.3d at 1262. The exhaustion requirement applies to retaliation complaints by federal employees. See Ferry v. Hayden, 954 F.2d 658, 660-61 (11th Cir. 1992) (vacating district court's order for not dismissing federal employee's relation claims due to his failure to exhaust administrative remedies).

---

[11]    Defendant raises the possibility of the Court construing Plaintiff claims under the Whistleblower Protection Act (WPA). (Mot. to Dismiss at 17 n.8.) Plaintiff mentions nowhere the WPA. The WPA is an amendment to the CSRA, and the CSRA provides the exclusive procedure for challenging federal personnel decisions. Thus, the Court construes Plaintiff's claims under the CSRA, and applies its framework. See Hendrix v. Snow, 170 Fed. Appx. 68, 78-79 (11th Cir. 2006) (citing Broughton v. Courtney, 861 F.2d 639, 643 (11th Cir. 1988)).

Plaintiff has failed to set forth facts demonstrating that she alleged and fully exhausted her retaliation claims in the administrative courts. The MSPB has jurisdiction to directly review adverse employment decisions, including retaliation claims under the CSRA, affecting federal employees allegedly motivated in part by discrimination. See Chappell v. Chao, 388 F.3d 1373, 1375 (11th Cir. 2004); 5 U.S.C. §§ 7702(a), 7512. Such actions are referred to as "mixed cases." Mixed case decisions by the MSPB are reviewable by the EEOC pursuant to 5 U.S.C. § 7702(b)(1) and to the appropriate district court pursuant to 5 U.S.C. § 7703(b)(2). Chappell, 388 F.3d at 1375. The Federal Circuit has jurisdiction to review MSPB decisions not involving discrimination. In reviewing mixed cases under § 7703, district courts review discrimination claims de novo and apply the arbitrary and capricious standard of § 7703(c) to all other claims brought before the MSPB. Kelliher v. Veneman, 313 F.3d 1270, 1275 (11th Cir. 2002).

Here, because Plaintiff's adverse employment actions were allegedly due to disability discrimination, Plaintiff brought a mixed claim before the MSPB. (Compl. Ex. 4.) An ALJ for the MSPB made an initial decision, rejecting all of Plaintiff's contentions. (See Compl. Ex. 3.) The ALJ's eighteen-page decision never discussed Plaintiff's retaliatory non-selection regarding the above listed positions within the agency, or her

19

termination constituting reprisal, but instead focuses on Plaintiff's termination as an act of disability discrimination.[12] (See Compl. Ex. 3.) Defendant claims that the Court has no jurisdiction over the retaliation claims because they were not fully exhausted. The court agrees.

Faced with Defendant's argument, Plaintiff only states the following "If the merits of one or more of Plaintiff's claims have not been previously adjudicated because the MSPB AJ declined to consider them, and Plaintiff objected to their exclusion() [sic], then it seems there's all the more reason they should be considered here." (Resp. at 10.) Plaintiff cites nothing in support of this assertion, or that she is referring to her retaliation claims, specifically.

Bearing in mind that Plaintiff is *pro se*, the Court has searched Plaintiff's complaint and the exhibits attached thereto for facts addressing the issue of whether Plaintiff complied with the doctrine of exhaustion of administrative remedies regarding the retaliation claims. To the extent that it may be argued Plaintiff raised the retaliation claims in her MSPB Appeal Form by checking "reprisal" on one form and inserting conclusory allegations in her explanation of why she though the agency was wrong on another form, (see compl. ex. 4 at 5-6), the court finds that the claims were, if raised, nevertheless

---

[12] The Court finds that Plaintiff's disability discrimination claim surrounding her termination has been fully exhausted.

forfeited through either abandonment or waiver. See Stephens v. Connley, 842 F. Supp. 1457, 1459 (M.D. Ga. 1994) (collecting factors courts have used to determine when claims have been abandoned and/or waived in this context); see also Chaney v. Rubin, 986 F. Supp. 516, 520-22 (D.D. Ill. 1997) (finding plaintiff abandoned race discrimination claim before MSPB despite originally raising it in EEO complaints and a MSPB Appeal Form by checking "race" box and inserting the words "race" and "discrimination" in his administrative forms); Bullock v. Windall, No. CIV.A.95-W-1031-N, 1997 WL 1876544, at *5-6 (M.D. Ala. Aug, 12, 1997).

Applying the factors outlined in Stephens, id. at 1459, the Court notes that the MSPB ALJ initial decision does not address the retaliation claims, neither the MSPB or EEOC appeal orders issued reference Plaintiff's alleged retaliation claims, nor does Plaintiff assert she sought review of the initial MSPB ALJ's omission of her retaliation claims in either of her appeals. Moreover, Plaintiff does not demonstrate that she presented to the MSPB evidence of retaliation. Under the factors set forth in Stephens, the Court finds that Plaintiff, to the extent that she raised the retaliation claims, waived or abandoned them.

In sum, the Court is not persuaded that it should not dismiss the retaliation claim for failure to exhaust

administrative remedies based on Plaintiff's unsupported assertion in her response. Plaintiff asks the Court to judicially review her alleged retaliation claim pursuant to § 7703 without the merits of such a claim being analyzed by the MSPB.[13] Not only is there no MSPB decision to review regarding retaliation, practically speaking, but Plaintiff has failed to present to the Court, through argument or supporting documentation attached to her complaint, allegations sufficient to satisfy the Court that she has complied with the exhaustion doctrine.

The Court will not address an unexhausted claim. Doing so will allow Plaintiff to circumvent the exhaustion requirement by benefiting from what is, at best, an unclear assertion of her purported retaliation claim in her MSPB Appeal Form, which, based on the complaint and the exhibits attached thereto, received no further attention throughout the administrative process. For these reasons, the claim is **DISMISSED** for lack of subject matter jurisdiction.

---

[13]    The Federal Circuit has addressed this issue stating that "When an appeal has been taken to the MSPB, until the discrimination issue and the appealable action have been decided on the merits by the MSPB, an appellant is granted no rights to a trial de novo in a civil action under § 7702 or § 7703." Ballentine v. Merit Sys. Prot. Bd., 738 F.2d 1244, 1246 (Fed. Cir. 1984). See also Checketts v. Merit Sys. Prot. Bd., 50 Fed. Appx. 979, 980 (Fed. Cir. 2002) (exercising jurisdiction over MSPB appeal only because the MSPB has not reached the merits of the plaintiff's discrimination claim); Williams v. Dept. of the Army, 715 F.2d 1485, 1491 (Fed. Cir. 1983).

**D.** **Plaintiff's Prohibited Personnel Practices and/or Disability Discrimination Claim for her Termination**

The final set of claims at issue are claims addressing Plaintiff's termination from employment, independent of retaliation. Plaintiff's complaint can be construed as alleging that her termination of employment with the agency constitutes a prohibited personnel practice under the CSRA or a claim of intentional disability discrimination (disparate treatment) under the Rehab Act. The Court will thus analyze both claims.

**1. Prohibited Personnel Practice Under the CSRA**

The Court reviews the MSPB's decision to affirm Plaintiff's termination as a personnel practice under the CSRA applying the arbitrary and capricious standard of § 7703(c).

> The arbitrary and capricious standard allows [the Court] only to determine that the decision below was: '(1) not arbitrary or capricious, (2) made without regard to law, or (3) not based on substantial evidence.' This standard is the least likely to allow finding grounds for reversal. [The Court] must defer to the ALJ's credibility determinations, which remain undisturbed unless they are inherently unreasonable or self-contradictory.

Bolton v. Potter, 198 Fed. Appx. 914, 915-16 (11th Cir. 2006) (internal citations omitted). The agency may terminate an employee solely for the purpose of promoting the efficiency of the service. 5 U.S.C. § 7512(a). In doing so, the agency must show a nexus between the former employee's misconduct and the

23

service's efficiency. <u>Boylan v. U.S. Postal Serv.</u>, 704 F.2d 573, 575 (11th Cir. 1983). However, the particular disciplinary action is left to the discretion of the agency. <u>Boylan</u>, 704 F.2d at 575.

Here, the MSPB applied the correct legal standards and acted based upon substantial evidence in affirming the agency's decision to terminate Plaintiff. (Compl. Ex. 3 at 14-15.) Plaintiff admitted her excessive tardiness. The ALJ found that the decision to terminate Plaintiff promoted the agency's efficiency under 5 U.S.C. § 7512(a). The ALJ concluded there was an established "nexus" between terminating Plaintiff, who was charged AWOL for her excessive tardiness, and the agency's efficiency, which are "inherently connected". (<u>Id.</u> at 14.) Further, the ALJ found the penalty of termination was reasonable under the circumstances, citing the fact that Plaintiff had been previously disciplined twice for tardiness prior to being terminated. (<u>Id.</u> at 14-15.) It cannot be said that the ALJ's decision was "arbitrary or capricious." The Court sees no reason to disturb the ALJ's decision. Plaintiff's claim of prohibited personnel practices under the CSRA for her termination is thus **DISMISSED.**

## 2.   Disability Discrimination Under the Rehab Act

The Court reviews Plaintiff's discrimination claim *de novo*.

Kelliher, 313 F.3d at 1275. A disparate treatment claim, such as

that brought by Plaintiff, requires proof of discriminatory

intent through either direct or circumstantial evidence. Denney

v. City of Albany, 247 F.3d 1172, 1182-83 (11th Cir. 2001). When

a plaintiff can only present circumstantial evidence of

discrimination, a district court must utilize the McDonnell

Douglas burden shifting framework to analyze the claim. Weston-

Brown v. Bank of Am. Corp, 167 Fed. Appx. 76, 79 (11th Cir.

2006); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

In McDonnell Douglas, the United States Supreme Court

established "the allocation of the burden of production and the

order for the presentation of proof" in discrimination cases.

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 502 (1993). The

McDonnell Douglas framework encompasses both a prima facie case

and a burden-shifting scheme. This method of proof seeks to

narrow a plaintiff's case to its most basic elements. Tex. Dep't

of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). The

plaintiff must first establish a prima facie case of

discrimination. If the plaintiff establishes a prima facie case,

a feather-weight burden of production shifts to the defendant to

articulate a legitimate, nondiscriminatory reason for the action

in question. Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir.

1997). If the defendant carries its burden, the plaintiff resumes the burden of persuasion to show that the employer's proffered explanation was not the real reason for the employment change, but was instead a pretext for discrimination. Tex. Dep't of Cmty. Affairs, 450 U.S. at 256. Here, conclusory allegations are not enough to raise an inference of intentional discrimination. Grigsby v. Reynolds Metals Co., 821 F.2d 590, 597 (11th Cir. 1987). Finally, the plaintiff, at all times, carries the ultimate burden of proving by the preponderance of the evidence that the challenged employment decision was motivated by discriminatory animus. See id. at 252-53.

"The [Rehab Act] prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability. To establish a prima facie case of discrimination under the Act, an individual must show that (1) [s]he has a disability; (2) [s]he is otherwise qualified for the position; and (3) [s]he was subjected to unlawful discrimination as the result of h[er] disability." Cavicchi, 2004 WL 4917357, at *6 (internal citations omitted).

Assuming, without deciding, that Plaintiff is disabled[14] and was otherwise qualified for her position within the agency, the

---

[14]    Plaintiff argues that the new standard for determining whether an individual is disabled under the ADA Amendments Act of 2008 (ADAA) should apply retroactively to her case. (Resp. at 13-15.) The Eleventh Circuit has not passed on the issue of whether the ADAA applies retroactively to claims arising prior to the statute's effective date, January 1, 2009, but other

pleadings reveal that Plaintiff cannot show that she was terminated because of her disability. Plaintiff alleges that the agency terminated her for no other reason but her excessive tardiness.[15] Plaintiff in fact admits being excessively late to work, but claims her lateness should be excused because of her alleged disability. (Compl. Ex. 3 at 3.) Plaintiff essentially alleges that she cannot legally be terminated for something that interferes with her work if the impediment is due to her disability. Plaintiff is mistaken as to the law. Terminating Plaintiff for her misconduct, tardiness, even though such misconduct was related to or even caused by her disability, is not illegal disability discrimination. See Ray v. Kroger, 264 F. Supp. 2d 1221, 1228 (S.D. Ga. 2003) (collecting Americans With Disabilities Act (ADA)[16] cases reasoning that an employer is free to fire an employee based on misconduct related to a disability); see, e.g., Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal., 31 F.3d 209, 214-15 (4th Cir. 1994) (affirming district

---

circuits have decided that it does not. See, e.g. E.E.O.C. v. Agro Distrib., LLC, 555 F.3d 462, 469 n.8 (5th Cir. 2009); see also Moran v. Premier Educ. Group, LP, 599 F. Supp. 2d 263, 271 (D. Conn. 2009) (collecting cases that have not applied the ADAA retroactively). The Court, pursuant to this persuasive authority, will not apply the new standard set forth in the ADAA retroactively to Plaintiff's claims, which predate the effective date of the ADAA.

[15] To the extent that Plaintiff alleges that her termination was retaliatory for protected conduct or disclosures, her claim has not been exhausted, as set forth above.

[16] "The standard for determining liability under the Rehab[] Act is the same as that under the ADA." Sutton v. Ladder, 185 F.3d 1203, 1208 n.5 (11th Cir. 1999).

court's holding that employer is free to fire employee with lupus for her disability-related absences). Thus, Plaintiff cannot state a prima facie case, and Defendant is entitled to judgment as a matter of law.

Though the Court need not go any further, the Court also finds that Plaintiff has, in her pleadings, admitted her conduct of excessive tardiness. Then, faced with the articulated, legitimate, non-discriminatory reason of excessive tardiness for her termination, she failed to provide anything more than conclusory allegations of disability discrimination. It is well settled that "a formulaic recitation of the elements of a cause of action will not do" to survive a motion to dismiss. Twombly, 550 U.S. at 555. (internal citations and punctuation omitted). The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," id. at 545, and be sufficient "to state a claim for relief that is plausible on its face." Id. at 547. Plaintiff has not even pled facts that, if taken as true, show the articulated, legitimate, non-discriminatory reason of excessive tardiness is pretextual here. Mere conclusory allegations of discrimination are not enough. See Grigsby, 821 F.2d at 597. For the foregoing reasons, Plaintiff's claim is **DISMISSED**.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss (doc. no. 23) is **GRANTED**. The Clerk shall terminate all deadlines and motions and is directed to **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 23rd day of March, 2010.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA